1  MARK RUMOLD (SBN 279060)
   mark@eff.org
2  DAVID GREENE (SBN 160107)
3  NATHAN D. CARDOZO (SBN 259097)
   LEE TIEN (SBN 148216)
4  KURT OPSAHL (SBN 191303)
5  HANNI FAKHOURY (SBN 252629)
   ELECTRONIC FRONTIER FOUNDATION
6  815 Eddy Street
7  San Francisco, CA  94109
   Telephone:  (415) 436-9333
8  Facsimile:  (415) 436-9993

9
   *Counsel for Plaintiff Human Rights Watch*
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13  HUMAN RIGHTS WATCH,                     )   Case No: 2:15-cv-2573
                                            )
14                         Plaintiff,       )   **COMPLAINT FOR**
                                            )   **DECLARATORY AND**
15       v.                                 )   **INJUNCTIVE RELIEF**
                                            )
16  DRUG ENFORCEMENT                        )
17  ADMINISTRATION and MICHELE              )
    LEONHART, in her official capacity as its )   **DEMAND FOR JURY TRIAL**
18  Administrator; FEDERAL BUREAU OF        )
19  INVESTIGATION and JAMES COMEY,          )
    in his official capacity as its Director; the )
20  DEPARTMENT OF JUSTICE and ERIC          )
21  HOLDER in his official capacity as      )
    Attorney General; DEPARTMENT OF         )
22  HOMELAND SECURITY and JEH               )
23  JOHNSON, in his official capacity as    )
    Secretary; the UNITED STATES OF         )
24  AMERICA; and DOES 1-100,                )
                                            )
25                         Defendants.      )
26  _____

27

28  _____

                          COMPLAINT

1.      Plaintiff Human Rights Watch brings this action on behalf of itself and its affected staff. All allegations contained within the complaint are based on either direct evidence or reasonable inferences from direct evidence. All allegations based on inference are likely to have direct evidentiary support after a reasonable opportunity for further discovery. Accordingly, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

2.      This lawsuit challenges a program of untargeted and suspicionless surveillance of Americans.

3.      Specifically, this lawsuit challenges the bulk collection, retention, search, use, and dissemination of Americans' telephone records by the Drug Enforcement Administration ("DEA") and the other defendants (collectively, "Defendants"). The Defendants' untargeted call record surveillance program (the "Mass Surveillance Program" or the "Program") indiscriminately sweeps in the call records of millions of Americans communicating by telephone with certain specified foreign countries (the "Designated Countries").

4.      Plaintiff Human Rights Watch ("HRW") is a leading international human rights organization, dedicated to defending and promoting human rights around the world. In support of its mission, HRW and its staff regularly communicate by telephone with individuals in the Designated Countries.

5.      The Mass Surveillance Program sweeps in the communication records

of HRW and its staff as they advocate for human rights. HRW's records are collected, retained, searched, and disseminated without any suspicion of wrongdoing and without any judicial authorization or oversight. These records reveal to the government the network of HRW's associations in the Designated Countries, substantially burdening HRW's ability to engage in its mission of defending and promoting global human rights.

6.     The Mass Surveillance Program violates the First and Fourth Amendments to the Constitution.

## JURISDICTION AND VENUE

7.     This case arises under the Constitution and laws of the United States and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331. The Court also has jurisdiction under 5 U.S.C. § 702 and 28 U.S.C. §§ 2201-2202.

8.     Defendants have sufficient contacts with this district generally and, in particular, with regard to the events herein alleged. Defendants are subject to the exercise of this court's jurisdiction over them.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1)(B).

/ / /

/ / /

2

**PARTIES**

10.   Plaintiff HRW is a non-profit, non-partisan international human rights organization, based in New York, New York, with offices in Los Angeles, California. Through its domestic and international network of offices and staff, HRW challenges governments and those in power to end abusive practices and to respect international human rights law by enlisting the public and the international community to support the cause of human rights for all.

11.   Defendant DEA is a federal law enforcement agency under the direction and control of the Department of Justice. It is charged with enforcement of the Controlled Substances Act. It is the primary agency carrying out the Mass Surveillance Program.

12.   Defendant Michele Leonhart is the Administrator of DEA, in office since November 2007. Administrator Leonhart has ultimate authority over DEA's activities.

13.   Defendant Federal Bureau of Investigation ("FBI") is a federal law enforcement agency under the direction and control of the Department of Justice. FBI searches, uses, disseminates, and retains information obtained through the Mass Surveillance Program. That information remains in FBI data repositories.

14.   Defendant James Comey is the Director of FBI, in office since September 2013. Director Comey has ultimate authority over FBI's activities.

15.   Defendant Department of Justice ("DOJ") is a Cabinet-level executive department in the United States government charged with law enforcement, defending the interests of the United States according to the law, and ensuring fair and impartial administration of justice for all Americans. DEA and FBI are components of DOJ.

16.   Defendant Eric Holder is the Attorney General of the United States, in office since February 2009. Attorney General Holder has ultimate authority over DOJ's activities and those of its components, DEA and FBI.

17.   Defendant Department of Homeland Security ("DHS") is a Cabinet-level executive department in the United States government charged with ensuring the security of the nation against terrorism and other hazards. DHS searches, uses, disseminates, and retains information obtained through the Mass Surveillance Program. That information remains in DHS data repositories.

18.   Defendant Jeh Johnson is the Secretary of Homeland Security, in office since December 2013. Secretary Johnson has ultimate authority over DHS's activities.

19.   Defendant United States is the United States of America, its departments, agencies, and entities.

20.   Defendants Does 1-100 are persons, officers, officials, or entities who have authorized or participated in the Mass Surveillance Program. Plaintiff will

4

1  allege their true names and capacities when ascertained.

2  21.   Each Defendant is responsible in some manner for the alleged

3  occurrences, and the injuries to Plaintiff were proximately caused by the acts or

4  omissions of the named Defendants, as well as Does 1-100.

5

6  **FACTUAL ALLEGATIONS RELATED TO ALL COUNTS**

7  **BACKGROUND**

8

9  22.   The Mass Surveillance Program is a program of untargeted and

10  suspicionless surveillance of Americans.

11

12  23.   The Program consists of Defendants' bulk collection, retention, search,

13  use, and dissemination of call records for all, or substantially all, telephone calls

14  originating in the United States and terminating in the Designated Countries. The

15  Mass Surveillance Program maintains information about millions of calls made by

16  Americans, including Plaintiff HRW.

17

18  24.   The information collected as part of the Mass Surveillance Program

19  includes: the initiating telephone number; the receiving telephone number; the

20  date, time, and duration of call; and the method by which the call was billed.

21

22  25.   Since at least 2011, DEA has issued subpoenas to American

23  telecommunications service providers, requiring the providers to turn over

24  information in bulk about Americans' calls to the Designated Countries. Call

25  records were obtained without any particularized suspicion of wrongdoing, and the

26

27

28

5

Program was not subject to any judicial oversight or authorization.

26.    The Mass Surveillance Program was carried out in secret for years. News reports indicate the Program began as early as the 1990s. Nevertheless, from its inception until January 2015, the Program was never disclosed to the public, nor was it disclosed in any criminal proceedings.

27.    In a January 2015 filing in *United States v. Hassanshahi*, No. 13-CR-274 (RC), (D.D.C), Defendants acknowledged the existence of the Mass Surveillance Program for the first time. It was described in the Declaration of Robert Patterson, a public version of which is attached hereto as Exhibit A ("Patterson Declaration") and incorporated herein by reference.

28.    According to the Patterson Declaration, Defendants obtained call records for the Mass Surveillance Program under 21 U.S.C. § 876, which authorizes the Attorney General to issue subpoenas for the production of "any records (including books, records, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material to [an] investigation [relating to the enforcement of the Controlled Substances Act]."

29.    The Mass Surveillance Program indiscriminately sweeps in call records for calls between the United States and the Designated Countries—countries that are determined to have a "demonstrated nexus to international drug

trafficking and related criminal activities." Patterson Decl., ¶ 4.

30.    DEA has acknowledged that Americans' calls to one country—Iran—are included in the Mass Surveillance Program. Patterson Decl., ¶ 4.

31.    However, the Mass Surveillance Program includes calls made to other countries as well. Pursuant to section 706(1) of the Foreign Relations Authorization Act (P.L. 107-228), 22 U.S.C. § 2291j-1(1), the President is required to annually certify countries that are major drug transit and/or major illicit drug producing countries. Since at least 2010, the President has annually certified the following countries as such: Afghanistan, The Bahamas, Bolivia, Burma, Colombia, Costa Rica, Dominican Republic, Ecuador, Guatemala, Haiti, Honduras, India, Jamaica, Laos, Mexico, Nicaragua, Pakistan, Panama, Peru, and Venezuela. *See* Presidential Determination on Major Drug Transit or Major Illicit Drug Producing Countries for Fiscal Year 2014*, 78 FR 58855, 2013 WL 5325618 (Sep. 13, 2013).

32.    Each of these countries is a focus of DEA activity. For example, DEA has 11 offices in Mexico alone; two offices in Colombia; and two offices in Ecuador. DEA has at least one office in each of the following countries: Afghanistan, Burma, Costa Rica, Dominican Republic, Guatemala, Haiti, Honduras, India, Jamaica, Laos, Nicaragua, Pakistan, Panama, Peru, and Venezuela.

33.     These countries, as well as others, are among the Designated Countries included in the Mass Surveillance Program.

34.     The telephone communications information Defendants collect through the Mass Surveillance Program is retained and stored by Defendants in one or more databases. These databases contain call information for millions of Americans' calls to the Designated Countries.

35.     These databases are then searched not only by officers and employees of DEA, but by the officers and employees of DHS, FBI, and Does 1-100. For example, in the *Hassanshahi* case, the search of the Program database(s) was not performed by DEA. Instead, Homeland Security Investigations, an investigative arm of DHS, accessed and searched the Program database(s).

36.     Use of the Program database(s) is not limited to investigations of illegal drug trafficking or production. Instead, agencies search the database(s) for any purpose (including, but not limited to, investigatory purposes), regardless of the investigation's connection to illegal drugs. For example, in the *Hassanshahi* case, DHS employees searched the Program database—and used and disseminated information obtained from that search—during an investigation of possible violations of export and trade laws.

37.     According to the Patterson Declaration, the Program was "suspended" in 2013. Further, according to the Patterson Declaration, the Mass Surveillance

Program database is no longer being queried for "investigatory purposes" and "information is no longer being collected in bulk pursuant to 21 U.S.C. § 876." Patterson Decl., ¶ 6. Defendants continue to use and disseminate information obtained through the Mass Surveillance Program. Defendants have not stated that all information obtained through the Mass Surveillance Program, including HRW's information, has been purged from Defendants' systems.

38.    Additionally, Defendants could resume bulk collection under 21 U.S.C. § 876 at any time. Defendants may still be collecting call record information in bulk under other authorities.

## PLAINTIFF'S ALLEGATIONS

39.    Plaintiff HRW is a leading non-profit, non-partisan international human rights organization. HRW's global advocacy work involves investigating human rights abuses, exposing the facts widely, and pressuring those in power to respect rights and secure justice.

40.    HRW's expert staff includes country-specialists, lawyers, journalists, advocates, and academics of diverse backgrounds and nationalities. Many of these experts conduct fact-finding missions and investigate human rights abuses, impartially reporting on human rights conditions in some 90 countries around the world.

41.    HRW and its staff work regularly on human rights issues in many of

the Designated Countries. Countries that feature illicit drug production or trafficking also often present a range of human rights abuses.

42.    For example, HRW has dedicated experts monitoring and working to protect human rights in Iran. Those experts document human rights abuses and violations occurring within the country, including complaints concerning arbitrary arrest and detention, torture, and executions.

43.    Further, HRW has experts researching and monitoring each of the following countries identified as major drug transit and/or major illicit drug producing countries: Afghanistan, Colombia, Ecuador, Haiti, Honduras, India, Jamaica, Mexico, Pakistan, Peru, and Venezuela.

44.    Using U.S. telecommunications services, HRW and its staff communicate in the regular course of work with individuals within many of the Designated Countries, including those listed above, to conduct the fact-finding necessary to accurately report on human rights abuses within the countries. Plaintiff's communications with its contacts and associates in these countries, including the mere fact that a communication occurred, are often extraordinarily sensitive.

45.    Using U.S. telecommunications services, HRW and its staff often communicate with victims of, or witnesses to, human rights abuses in many of the Designated Countries. These individuals often fear for their physical safety or their

10

life, and the mere fact of contacting an international human rights organization, like HRW, can put them in harm's way. Accordingly, the confidentiality of communications for Plaintiff's associates in these countries is often of the utmost concern.

46.     These communications to HRW's network of associates in many of the Designated Countries are made over HRW's Verizon phone lines, from staff members' personal phone lines, and through Internet-based platforms like Google Voice.

47.     Defendants obtained records of HRW's communications to the Designated Countries as part of the Mass Surveillance Program. Those records are searched each time Defendants query the Mass Surveillance Program database(s).

48.     The collection of Plaintiff's call records includes the numbers called by HRW and its staff; the date, time, and duration of the calls; and the method by which the calls were billed. This information, when collected in bulk, provides the government with the network of HRW's sources, colleagues, and associates within the called Designated Countries.

49.     Defendant's aggregation of this information discloses the associational connections among HRW, its staff, and its associates within the called Designated Countries, which ordinarily would not be disclosed to the public or the government. This is information HRW often considers sensitive and private. With

the information obtained by the Mass Surveillance Program, the government can identify any and all of HRW's telephone contacts within the Designated Countries.

50.    Even if the government never attempted to identify HRW's contacts and associates within the Designated Countries, the fact that the government collects this information in the first place—and the fact that this information remains within the Defendants' possession to this day—substantially burdens HRW's ability to effectively communicate with people inside the Designated Countries. This burden, in turn, hinders HRW's ability to effectively engage in its advocacy for global human rights.

51.    Because of the Mass Surveillance Program, Plaintiff cannot assure its associates abroad that their communications records will not be shared with American law enforcement or the government of another country. Plaintiff's associations and human rights advocacy efforts, as well as those of its members and staff, are substantially burdened by the fact that the Mass Surveillance Program creates a permanent government record of all Plaintiff's telephone communications with contacts in the Designated Countries.

52.    Plaintiff's associations and human rights advocacy efforts are burdened by Defendants' search and analysis of information obtained through the Mass Surveillance Program. Plaintiff's associations and political advocacy efforts are further burdened by Defendants' use and disclosure of the information obtained

COMPLAINT                    Case No: 2:15-cv-2573

from Defendants' searches and analyses of the Mass Surveillance Program database(s).

53.     Plaintiff's telephone communications information—collected, retained, and searched pursuant to the Mass Surveillance Program—was at the time of collection, and at all times thereafter, not relevant to an authorized investigation with respect to controlled substances, listed chemicals, tableting machines, or encapsulating machines.

54.     Defendants' bulk collection, retention, search, and use of the telephone communications information of HRW and its staff are done without lawful authorization, probable cause, and/or individualized suspicion—in violation of constitutional limitations and in excess of constitutional authority.

55.     Defendants, and each of them, have authorized, approved, supervised, performed, caused, participated in, aided, abetted, counseled, commanded, induced, procured, enabled, contributed to, facilitated, directed, controlled, assisted in, and/or conspired in the Mass Surveillance Program. Defendants have committed these acts willfully, knowingly, and intentionally. Defendants retain the information gathered pursuant to the Mass Surveillance Program, will continue to search and use such information, and absent an order of this Court enjoining and restraining them from doing so, will begin to collect the information again, if Defendants have not already.

**COUNT I**

**Violation of First Amendment—Declaratory, Injunctive, and Other Equitable Relief**

**(Against All Defendants)**

56.     Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

57.     Plaintiff and its staff use telephone calls to communicate and to associate with their associates within the Designated Countries, including to communicate and to associate privately.

58.     By their acts alleged herein, Defendants have violated and are violating the First Amendment free speech and free association rights of Plaintiff and its staff, including the right to communicate anonymously, the right to associate privately, and the right to engage in protected advocacy free from government interference.

59.     By their acts alleged herein, Defendants have imposed a direct and significant burden on the legal associations and speech of Plaintiff and its staff by, among other things, compelling the disclosure of its associations, and eliminating Plaintiff's ability to assure its associates in the Designated Countries abroad that the fact of their communications with them will be kept confidential.

60.    Defendants are irreparably harming Plaintiff and its staff by violating its First Amendment rights. Plaintiff has no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiff's legal rights unless enjoined and restrained by this Court.

61.    Plaintiff seeks this Court to declare that Defendants have violated the First Amendment rights of Plaintiff, its members, and its staff; enjoin Defendants, their agents, successors, and assigns, and all those in active concert and participation with them, from violating the First Amendment to the United States Constitution; and award such other and further equitable relief as is proper.

## COUNT II

### Violation of Fourth Amendment—Declaratory, Injunctive, and Equitable Relief

### (Against All Defendants)

62.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint, as if set forth fully herein.

63.    Plaintiff and its affected staff have a reasonable expectation of privacy in their telephone communications information, including in their international telephone communications information.

64.    By the acts alleged herein, Defendants have violated Plaintiff's reasonable expectation of privacy and denied Plaintiff its right to be free from

15

unreasonable searches and seizures as guaranteed by the Fourth Amendment to the Constitution of the United States.

65.     Defendants are now engaging in and will continue to engage in the above-described violations of Plaintiff's constitutional rights, and are thereby irreparably harming Plaintiff. Plaintiff has no adequate remedy at law for Defendants' continuing unlawful conduct, and Defendants will continue to violate Plaintiff's legal rights unless enjoined and restrained by this Court.

66.     Plaintiff seeks this Court to declare that Defendants have violated its Fourth Amendment rights; enjoin Defendants, their agents, successors, and assigns, and all those in active concert and participation with them from violating Plaintiff's rights under the Fourth Amendment to the United States Constitution; and award such other and further equitable relief as is proper.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court:

1.     Excerise jurisdiction over Plaintiff's Complaint;

2.     Declare that the Mass Surveillance Program violates Plaintiff's rights under the First and Fourth Amendments to the Constitution;

3.     Permanently enjoin Defendants from continuing the Mass Surveillance Program under 21 U.S.C. § 876 or any other authority;

4.     Permanently enjoin Defendants from future search, use, or

16

dissemination of any of Plaintiff's call records obtained through the Mass Surveillance Program;

5.    Order Defendants to provide an inventory of all Plaintiff's call records obtained through the Mass Surveillance Program;

6.    Order Defendants to purge all Plaintiff's call records obtained through the Mass Surveillance Program;

7.    Award to Plaintiff reasonable attorneys' fees and other costs of suit to the extent permitted by law; and

8.    Grant such other and further relief as the Court deems just and proper.

Dated:  April 7, 2015              Respectfully submitted,


                                   *s/     Mark Rumold*
                                   MARK RUMOLD
                                   DAVID GREENE
                                   NATHAN D. CARDOZO
                                   LEE TIEN
                                   KURT OPSAHL
                                   HANNI FAKHOURY

                                   ELECTRONIC FRONTIER
                                   FOUNDATION

                                   *Counsel for Plaintiff Human Rights Watch*

17

## JURY DEMAND

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated:  April 7, 2015                          Respectfully submitted,

                                                *s/      Mark Rumold*
                                                MARK RUMOLD
                                                DAVID GREENE
                                                NATHAN D. CARDOZO
                                                LEE TIEN
                                                KURT OPSAHL
                                                HANNI FAKHOURY

                                                ELECTRONIC FRONTIER
                                                FOUNDATION

                                                *Counsel for Plaintiff Human Rights Watch*

COMPLAINT                          Case No: 2:15-cv-2573