UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **Order HOLDING IN ABEYANCE Ruling on the Motion to Dismiss and GRANTING IN PART Plaintiff's Request for Discovery**

Before the Court is Defendants Drug Enforcement Administration ("DEA"), Michele Leonhart (DEA Administrator), Federal Bureau of Investigation ("FBI"), James Comey (FBI Director), Department of Justice ("DOJ"), Eric Holder (Attorney General), Department of Homeland Security ("DHS"), Jeh Johnson (DHS Secretary), and United States of America's (collectively, "Defendants" or the "Government") motion to dismiss for lack of subject matter jurisdiction.  Dkt. # 24; *Compl.* ¶¶ 11-19.  Also before the Court is Plaintiff Human Rights Watch's ("HRW") request for discovery and an evidentiary hearing related to the Government's motion.  *See* Dkt. # 33.  The Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); L.R. 7-15.  After considering the arguments in the supporting and opposing papers, the Court HOLDS IN ABEYANCE ruling on the motion to dismiss and GRANTS IN PART HRW's request for discovery and an evidentiary hearing.

I.      Background

        A.      Factual Background

        Plaintiff Human Rights Watch ("HRW") is an international non-profit organization dedicated to defending and promoting human rights around the world.  *Id.* ¶¶ 4, 10.  It challenges governments and those in power to end abusive practices and to respect international human rights laws by enlisting the public and international community to support the cause of human rights for all.  *Id.* ¶ 10.  In support of its mission, HRW and its staff regularly communicate by telephone with individuals in foreign countries.  *Id.* ¶¶ 3-4.  In this lawsuit, HRW, on behalf of itself and its staff, challenges a program of "untargeted and suspicionless surveillance of Americans" by the Government.  *Compl.* ¶¶ 1-2, 4.  The Complaint refers to this program as the "Mass Surveillance Program" or the "Program."  *Id.* ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

> i.     *The Patterson Declaration's Description of the Mass Surveillance Program*

In a January 2015 filing in a criminal case in the District Court for the District of Columbia (*United States v. Hassanshahi*, No. 13-CR-274 (RC) (D.D.C.)), the Government acknowledged the existence of the Mass Surveillance Program for the first time in the declaration of Assistant Special Agent in Charge at the DEA, Robert W. Patterson ("Patterson"). *Id.* ¶ 27.  HRW attached the slightly redacted public version of the declaration to its complaint (the "Patterson Declaration").  *See Compl.*, Ex. A ["Patterson Decl."].  In the Patterson Declaration, the Government disclosed that it had collected and queried certain telephone data under the authority of 21 U.S.C. § 876.  *Patterson Decl.* ¶ 4.

The Government attested that it had previously collected "telecommunications metadata" pursuant to administrative subpoenas served on United States telecommunications service providers that the Government stored in a federal law enforcement database.  *Id.* ¶¶ 3-4.  This metadata consisted exclusively of the initiating telephone number; the receiving telephone number; the date, time, and duration of the call; and the method by which the call was billed.  *Id.* ¶ 4.  No subscriber information, other personal identifying information, or communication content was included in the database.  *Id.*  The collected metadata related to international phone calls originating in the United Sates and calling "designated foreign countries" that were determined to have a "demonstrated nexus to international drug trafficking and related criminal activities."  *Id.*  The Patterson Declaration specifically identified Iran as one of the "designated foreign countries."  *Id.*  The collected information could then be used to query a telephone number where "federal law enforcement officials had a reasonable articulable suspicion that the telephone number at issue was related to an ongoing federal criminal investigation."  *Id.* ¶ 5.

The Patterson Declaration attached to the Complaint declares that use of this federal law enforcement database was suspended in September 2013 and that it is no longer being queried for investigatory purposes.  *Id.* ¶ 6.  Moreover, information is no longer being collected in bulk pursuant to 21 U.S.C. § 876.  *Id.*

> ii.     *Additional Allegations Regarding the Mass Surveillance Program*

The Complaint alleges that the Mass Surveillance Program consists of the Government's collection, retention, search, use, and dissemination of call records for "all, or substantially all" telephone calls originating in the United States and terminating in the "designated countries." *Id.* ¶ 23.  The Complaint generally defines "designated countries" as they were defined in the Patterson Declaration – "countries that are determined to have a 'demonstrated nexus to international drug trafficking and related criminal activities'" – and further alleges that these countries are same as those that the President  annually certifies as "major drug transit and/or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

major illicit drug producing countries" pursuant to the Foreign Relations Authorization Act, 22 U.S.C. §§ 2291j-l(1).  *Id.* ¶¶ 29, 31.  The Complaint lists 20 countries that the President has annually certified under this statute since 2010 and alleges that each of these countries is a focus of DEA activity.  *Id.* ¶¶ 31-32.  The Patterson Declaration does not mention the Foreign Relations Authorization Act and only specifically identifies Iran as a "designated foreign country" for the purposes of the Program.  *Patterson Decl.* ¶ 4.

The Complaint asserts that the telephone data collected through the Mass Surveillance Program is retained and stored by the Government in "one or more" databases, *see Compl.* ¶ 34, but the Patterson Declaration only references one database, *Patterson Decl.* ¶¶ 1, 3-6.  Contrary to the sworn representation in the Patterson Declaration, HRW alleges that the Government continues to search, use, and disseminate information obtained through the Program.  *Compl.* ¶¶ 37, 55.

   *iii.*  *HRW Telephone Records*

HRW's staff includes country-specialists, lawyers, journalists, advocates, and academics who conduct fact-finding missions and investigate human rights abuses, reporting on human rights conditions in some 90 countries around the world.  *Id.* ¶ 40.  HRW asserts that it and its staff work regularly on human rights issues in many of the designated foreign countries, including Iran and eleven other specifically identified countries, because the countries that feature illicit drug production or trafficking often present a range of human rights abuses.  *Id.* ¶ 41-43.

The Complaint states that HRW and its staff use U.S. telecommunications services to communicate with individuals, such as victims of or witnesses to human rights abuses, in these specified countries.  *Id.* ¶¶ 44-45.  HRW asserts that just the fact that communication with these individuals has occurred is often "extraordinarily sensitive" because these contacts "often fear for their physical safety" and the act of "contacting an international human rights organization, like HRW, can put them in harm's way."  *Id.* ¶¶ 44-45.  HRW communicates to individuals in the designated countries using HRW's Verizon phone lines, staff members' personal phone lines, and Internet-based platforms like Google Voice.  *Id.* ¶ 46.  From these supporting facts, HRW alleges that "Defendants obtained records of HRW's communications to the Designated Countries as part of the Mass Surveillance Program."  *Id.* ¶ 47.

The Complaint claims that the telecommunications metadata, collected in bulk, provides the Government with the network of HRW's sources, colleagues, and associates within the designated countries, which is information that HRW often considers sensitive and private.  *Id.* ¶¶ 48-49.  HRW asserts that even if the Government never queried or attempted to identify its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

contacts within the designated countries, "the fact that the government collects this information in the first place . . . burdens HRW's ability to effectively communicate with people inside the Designated Countries" because HRW "cannot assure its associates abroad that their communications records will not be shared with American law enforcement[.]" *Id.* ¶¶ 50-51.

### iv.      *The Second Patterson Declaration*

The Patterson Declaration states that use of the database was suspended in September 2013, that it is no longer being queried for investigatory purposes, and that information is no longer being collected in bulk pursuant to 21 U.S.C. § 876. *Patterson Decl.* ¶ 6. However, the declaration is silent as to whether the Government *retained* the information contained in the database. In the Complaint, HRW highlights that the Government has not stated "that all information obtained through the Mass Surveillance Program, including HRW's information, has been purged from Defendants' systems." *Compl.* ¶ 37. HRW specifically alleges that the Government has in fact "retain[ed] the information gathered pursuant to the Mass Surveillance Program[.]" *Id.* ¶ 55.

Along with its motion to dismiss for lack of subject jurisdiction, the Government submits a second declaration of Robert W. Patterson ("Second Patterson Declaration"). *See Mot., Patterson Decl.* ["Second Patterson Decl.]. In the Second Patterson Declaration, Patterson attests that, "[p]rior to April 7, 2015, the date of the Complaint in the [] case, the database has been purged of the collected data, and the database no longer exists." *Id.* ¶ 3.

### B.      Procedural Background

On April 7, 2015, HRW filed this lawsuit against the Government on behalf of itself and its staff asserting that the Mass Surveillance Program violates its First Amendment associational rights and its Fourth Amendment right to be free from unlawful searches and seizures. Dkt. # 1. HRW does not request damages for past violations of its constitutional rights; instead, HRW requests the following forms of relief:

(1)      A declaration that the Mass Surveillance Program violates HRW's rights under the First and Fourth Amendments;

(2)      An order enjoining the Government from continuing the Mass Surveillance Program;

(3)      An order enjoining the Government from future search, use, or dissemination of HRW's call records obtained through the Mass Surveillance Program;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|

| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* |
|---|---|

> (4)     An order requiring the Government to provide an inventory of HRW's call records obtained through the Mass Surveillance Program;
>
> (5)     An order requiring the Government to purge all HRW's call records obtained through the Mass Surveillance Program; and
>
> (6)     Attorneys' fees and costs.

*Id.*

One month after filing the case, HRW filed a motion for expedited discovery to obtain more information about the Mass Surveillance Program. Dkt. # 19. The Court denied the motion on July 10, 2015. Dkt. # 31. While the motion for expedited discovery was pending, the Government moved to dismiss the case for lack of subject matter jurisdiction. Dkt. # 24. Along with its opposition brief, HRW filed a request for jurisdictional discovery and an evidentiary hearing. Dkt. # 33. The Government's motion and HRW's request are presently before the Court.

II.     Legal Standard

Federal courts are of limited jurisdiction and limits upon federal jurisdiction must not be disregarded or evaded. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Accordingly, whoever invokes the court's jurisdiction has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). If the Court lacks subject matter jurisdiction, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1).

A jurisdictional attack under Rule 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004); *Moon v. Rush*, No. 2:11-cv-03102-GEB-CKD, 2013 WL 4012828, *2 (E.D. Cal. Aug. 6, 2013). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In this review, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) apply in full force. *See City of L.A. v. Citigroup Inc.*, 24 F. Supp. 3d 940, 945 (C.D. Cal. 2014). Thus, the court must accept the facts pled in the complaint as true and construe them in the light

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

most favorable to the plaintiff.  *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).  Courts also consider documents attached to the complaint when reviewing the sufficiency of pleading allegations, *Hal Roach Studios v. Richard Reiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or exhibit," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Additionally, the pleading standard requires the plaintiff to allege "plausible" liability, meaning the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "[S]heer possibility" of liability is not enough.  *Id.*

In a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke jurisdiction," and courts may consider evidence outside the pleadings.  *Safe Air*, 373 F.3d at 1038-39.  In this review, the court "need not presume the truthfulness of the allegations in the complaint."  *City of L.A.*, 24 F. Supp. 3d at 945 (C.D. Cal. 2014) (citation omitted).  If a challenger presents evidence to "attack the substance of a complaint's jurisdictional allegations," "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  Accordingly, "[d]iscovery is necessary . . . if it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded that opportunity."  *Id.* (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

III.   Discussion

The Government moves to dismiss HRW's Complaint for lack of subject matter jurisdiction, arguing that HRW has failed to establish that it has standing to pursue its claims. The Government's motion first asserts a facial attack, contending that even accepting the plausible allegations of the Complaint as true, HRW has not alleged facts sufficient to establish standing.  Alternatively, the Government brings a factual attack on jurisdiction, offering evidence that the Government has already destroyed any information collected pursuant to the Mass Surveillance Program.  The Court will outline the constitutional standing requirements then discuss the Government's facial and factual jurisdictional challenges in turn.

A.   Standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and Controversies.'" *Clapper v. Amnesty Intern. USA*, 133 S.Ct. 1138, 1146 (2013). As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrystler Corp. v. Cumo*, 547 U.S. 332, 341 (2006). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Amnesty*, 133 S.Ct. at 1146 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The law of Article III standing, which is built on separation of powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* (citations omitted).

"The 'irreducible constitutional minimum of standing' contains three requirements: injury in fact, causation, and redressability. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-04 (1998) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). First, the plaintiff must allege an injury in fact – "a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Id.* at 103 (internal quotations omitted). "Second, there must be causation – a fairly traceable connection between the Plaintiff's injury and the complained-of conduct of the defendant." *Id.* (citations omitted). "And third, there must be redressability – a likelihood that the requested relief will redress the alleged injury." *Id.* (citations omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *Id.* at 104 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

    B.    Facial Attack on Standing

        i.    *Injury in Fact*

Because HRW does not seek damages, "it is not the presence or absence of a *past* injury that determines Article III standing." *Ervine v. Desert View Regional Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (emphasis added). Rather, when seeking injunctive relief, it is the "imminent prospect of future injury" or an "ongoing violation" that creates standing. *Id.*; *Steel Co.*, 523 U.S. at 108.

        1.    Past Collection of HRW Records

First, the Government argues that HRW has not pled that it suffered an injury in fact as a result of the Mass Surveillance Program because HRW has not plausibly alleged that its call records were ever collected pursuant to this Program. *Mot.* 8:6-9:7. The Government contends that HRW's allegation that "Defendants obtained records of HRW's communications to the Designated Countries as part of the Mass Surveillance Program," *see Compl.* ¶ 47, is insufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

because it lacks supporting factual allegations that render the claim plausible, rather than merely possible.  *See Iqbal*, 556 U.S. at 678.  For example, the Government highlights that the Complaint and the attached Patterson Declaration do not identify the specific U.S. telecommunications companies that received administrative subpoenas under the Program or a time period during which the Government requested and collected call information.  *Mot.* 8:17-9:2.  The Court acknowledges that the Complaint does not contain such particularized pleadings as: HRW staff called individuals in Iran using Verizon lines in 2012; the Government issued subpoenas to Verizon for all 2012 Iranian call data; Verizon produced all 2012 Iranian call data to the Government; the Government obtained HRW's 2012 Iranian call data.  However, HRW's allegation that the Government collected records of its communications to designated foreign countries pursuant to the Mass Surveillance Program is supported by some specific factual allegations that render this allegation plausible, rather than merely possible.

The Patterson Declaration states that the Government compiled a database "consisting of telecommunications metadata obtained from United States telecommunications service providers pursuant to administrative subpoenas served upon the service providers under the provisions of 21 U.S.C. § 876."  *Patterson Decl.* ¶ 4.  The metadata "related to international phone calls originating in the United Sates and calling [] designated foreign countries, one of which was Iran, that were determined to have a demonstrated nexus to international drug trafficking and related criminal activities."  *Id.*  The database could then "be used to query a telephone number where federal law enforcement officials had a reasonable articulable suspicion that the telephone number at issue was related to an ongoing federal criminal investigation."  *Id.* ¶ 5.  From these factual representations, HRW alleges that the program collected call records for "all, or substantially all" telephone calls originating in the United States and terminating in the "designated countries" since at least 2011.  *Compl.* ¶¶ 23, 25.

This allegation that "all, or substantially all" of these calls were collected necessarily embraces the more specific factual allegation that the Government issued subpoenas to all, or substantially all U.S. telecommunications companies to collect these calls.  *See Defenders of Wildlife*, 504 U.S. at 561.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Id.* (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)); *see also Bennett v. Spears*, 520 U.S. 154, 167 (1997) (finding that plaintiffs who used a lake for irrigation sufficiently pled injury in fact by alleging that "the amount of available water [in the lake] will be reduced and that they will be adversely affected thereby" because "it is easy to presume specific facts under which petitioners will be injured – for example, the Bureau's distribution of the reduction pro rata among its customers").  Moreover, HRW's allegation that the Government collected call data on "all, or substantially all" calls is plausible.  First, the Patterson Declaration did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

contain language indicating that the Government targeted only some U.S. telecommunications providers, instead it stated broadly that metadata was "obtained from United States telecommunications service providers." *Patterson Decl.* ¶ 4. Further, because the only criteria for collection were the involvement of certain initiating and receiving countries and the Program's aim was to create a broad database for criminal investigation queries, it is not implausible that subpoenas would be issued to all U.S. telecommunications companies requesting all qualifying data so that the Government could compile a complete database to better serve the investigative query purpose.

HRW alleges that it used U.S. telecommunications companies, such as Verizon, to communicate with individuals in foreign countries with drug connections, such as Iran. *See Compl.* ¶¶ 29-30, 41-46.[1] In light of the plausible allegation that nearly all such calls were collected pursuant to the Program, the pled facts regarding HRW's telephone practices support the ultimate allegation that the Government did collect HRW's call data, as directly alleged in the Complaint. *Id.* ¶ 47.

2.        Factual Bases for Ongoing or Future Injury

The Government further argues that even if it did collect HRW's call data as a part of its Mass Surveillance Program in the past, HRW does not plausibly allege that collection or use of the data is ongoing or imminently impending, as required to establish injury when seeking injunctive or declaratory relief. *Mot.* 9:8-10:5; *see Ervine*, 753 F.3d at 868; *Steel Co.*, 523 U.S. at 108. According to the Patterson Declaration, which as an evidentiary exhibit properly incorporated into the Complaint, HRW cannot rewrite by conclusory allegation, the Government no longer collects, uses, or queries data amassed via the Mass Surveillance Program. *Patterson Decl.* ¶ 6. The allegation that the Government "will begin to collect" data again in the future, *see Compl.* ¶ 55, is entirely speculative and based only on the factual allegation that collection

---

[1] The Government argues that HRW fails to allege that any of its staff members made calls to Iran, *see Mot.* 9:4-7, but, reading the Complaint in the light most favorable to HRW, the Complaint does assert that allegation. *See Faulkner*, 706 F.3d at 1019. In ¶ 41, HRW states that "HRW has dedicated experts monitoring and working to protect human rights in Iran." *Compl.* ¶ 41. In ¶ 42, HRW alleges that it also has "experts researching and monitoring" eleven additional drug transit or drug producing countries, and identifies those countries. *Id.* ¶ 42. In the following paragraph, HRW states that "[u]sing U.S. telecommunications services, HRW and its staff communicate in the regular course of work with individuals within many of the Designated Countries, including those listed above[.]" *Id.* ¶ 43. Reading the reference to the countries "listed above" in the light most favorable to HRW, the Court interprets the phrase to include Iran (identified in ¶ 41) as well as the eleven additional countries (identified in ¶ 42).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

has occurred in the past.  However, the "likelihood of a future injury cannot be based *solely* on the defendant's conduct in the past."  *See Gordon v. City of Moreno Valley*, 687 F. Supp. 2d 930, 938 (C.D. Cal. 2009) (internal quotation omitted) (emphasis in original).  Thus, the Court agrees the HRW fails to allege a plausible injury based on the collection, use, search, or dissemination of its call data because the conclusory allegations that such conduct is ongoing or might occur in the future are contradicted by the Patterson Declaration or unsupported by other plausible factual allegations.  *See Reply* 1:21-4:2.

However, under a facial jurisdictional analysis that does not consider the Second Patterson Declaration, HRW does plausibly allege that the Government has *retained* HRW's call data that it collected in the past.  The Patterson Declaration is silent as to whether the Government retained the information contained in the database.  *See generally Patterson Decl.* In the Complaint, HRW notes that the Government has not stated "that all information obtained through the Mass Surveillance Program, including HRW's information, has been purged from Defendants' systems," *Compl.* ¶ 37, and specifically alleges that the Government has in fact "retain[ed] the information gathered pursuant to the Mass Surveillance Program[.]" *Id.* ¶ 55. Thus, the retention of HRW's call records is the only Government conduct available to support HRW's argument that the Government is injuring it such that HRW has standing to bring its Fourth and First Amendment claims.

### 3.    Fourth Amendment Injury

The Ninth Circuit has held that retention of unlawfully seized information constitutes a Fourth Amendment injury in fact for standing purposes.  *See Mayfield v. U.S.*, 599 F.3d 964, 969-71 (9th Cir. 2010).  In *Mayfield*, the government unlawfully seized files from plaintiff's home and made derivative materials from those files, but later returned the files and paid damages to plaintiff pursuant to a partial settlement.  *Id.* at 966-68.  The plaintiff brought suit for declaratory relief (a ruling that the government was violating the Fourth Amendment) and alleged standing based on the government's "continued retention of derivative materials." *Id.* at 968-69.  "The district court determined that [plaintiff] alleged an ongoing injury by the very fact of the government's retention of derivative [] materials" and the Ninth Circuit "agree[d] that [plaintiff] suffers an actual, ongoing injury" on that basis.  *Id.* at 970-71.  Accordingly, HRW's allegation that the Government currently possesses unlawfully collected HRW call data, an allegation that the Court deems plausible based on the Complaint and Patterson Declaration, sufficiently pleads a Fourth Amendment injury in fact.

### 4.    First Amendment Injury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

HRW also asserts that the Government's conduct pursuant to the Mass Surveillance Program violates HRW's First Amendment rights under an associational "chilling" theory – HRW alleges that "the fact that th[e] information remains within the Defendants' possession to this day . . . substantially burdens HRW's ability to effectively communicate with people inside the Designated Countries" because HRW "cannot assure its associates abroad that their communications records will not be shared with American law enforcement or the government of another country." *See Compl.* ¶¶ 50-51. HRW's alleged injury is that due to the retention of its call data, HRW's contacts in the foreign designated countries, individuals who are "put in harm's way" based on the "mere fact of contacting an international human rights organization," will refuse to communicate with HRW, thus constricting HRW's associational rights. *Id.* ¶ 45, 50-51; *Mot.* 14:2-16. The Government argues that this purported "chill" in communication is speculative and "cannot qualify as a concrete, actual, or immediate injury even for the purposes of a First Amendment claim" and also challenges this injury on causation grounds. *See Mot.* 14:17-15:22.

The Court does not reach the legal sufficiency of this claimed injury because HRW has not alleged this First Amendment injury with factual sufficiency. Injury in fact requires a harm that is "'concrete' and 'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Steel Co.*, 523 U.S. at 103 (internal quotations omitted). HRW does not provide any factual allegations that indicate that HRW's chilled communication concern is actual and imminent rather than conjectural. For example, HRW does not allege that any of its contacts know about the Mass Surveillance Program or that they have ever refused to communicate with HRW due to the Government's retention of collected telephone metadata pursuant to a Program that has been occurring for years. Without alleging any specific supporting facts, HRW's statement that its "ability to effectively communicate with people inside the Designated Countries" has been burdened is a conclusory allegation that the Court does not accept. Moreover, the allegation that HRW "cannot assure its associates abroad that their communications records will not be shared" is implausible in light of the Patterson Declaration's attestation that the Government is not currently using or querying the collected information. *See Compl.* ¶ 51; *Patterson Decl.* ¶ 6.

"A plaintiff must demonstrate standing 'for each claim he seeks to press' and for 'each form of relief sought.'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *DaimlerChrystler*, 547 U.S. at 352). The Court concludes that Plaintiff has sufficiently alleged a Fourth Amendment injury in fact in the Government's retention of HRW's call records, but not a First Amendment injury in fact. Accordingly, HRW lacks standing to assert its First Amendment claim as alleged in the operative Complaint.

        *ii.*      *Causation*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

In the remainder of the facial standing analysis, the Court will only address HRW's claimed Fourth Amendment injury. To satisfy standing's causation requirement, there must be a "fairly traceable connection between the Plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 523 U.S. at 103 (citations omitted). The Government does not dispute that HRW's alleged Fourth Amendment injury – retention of unlawfully seized call data – is fairly traceable to its collection and retention of that material pursuant to the Mass Surveillance Program. *See Mot.* 14:1-15:22; *Opp.* 11:1-6. The Court agrees that the Fourth Amendment injury is fairly traceable to the Government's retention of HRW data seized pursuant to the Program.

       *iii.*    *Redressability*

"Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107. In the Court's facial jurisdictional analysis, redressability is easily satisfied. The Court has determined that the Government's retention of HRW's call records is a Fourth Amendment injury fairly traceable to the Government's Mass Surveillance Program. As one of its requested items of relief, HRW asks the Court to order the Government to "purge all Plaintiff's call records obtained through the Mass Surveillance Program." *See Compl.* 17:6-8. This request for injunctive relief would remedy the alleged Fourth Amendment injury. *See Mayfield*, 599 F.3d at 972 (where the injury is retention of unlawfully seized materials, "the only relief that would redress this Fourth Amendment violation is an injunction requiring the government to return or destroy such materials"). Accordingly, HRW has satisfied the redressability requirement of constitutional standing for its Fourth Amendment claim.

    C.    <u>Factual Attack on Standing</u>

The Court's assessment of standing is very different if the Court conducts a factual, rather than a facial, analysis of HRW's injury and the redressability of the injury. With its motion to dismiss for lack of subject matter jurisdiction, the Government submitted the Second Patterson Declaration, a piece of evidence that discloses information about the Mass Surveillance Program beyond that contained in the original Patterson Declaration attached to HRW's Complaint. *See Second Patterson Decl.* In the new declaration, Patterson attests that when the use of the database containing the telephone metadata was suspended in September 2013, the data was quarantined. *Id.* ¶ 3. Further, prior to April 7, 2015, the date HRW filed this lawsuit, "the database had been purged of the collected data, and the database no longer exists." *Id.* Thus, the Government has submitted evidence that HRW's collected data is no longer being retained and its requested injunctive relief as to this data has already been performed. If the Government is no longer collecting, searching, using, or disseminating HRW's call data, and it is also no longer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

retaining HRW's call data, HRW is not suffering a Fourth Amendment injury capable of supporting its claims for injunctive and declaratory relief.

HRW first attacks the impact of the Government's new evidence, arguing that the Second Patterson Declaration does not establish that HRW's records have been purged from the Government's files because it only addresses the records contained in one database, and does not state that HRW's records were contained in that database. *See Opp.*16:8-17:5. Moreover, even if that database were the only database or was the one that contained HRW's records, HRW contends that copies of HRW's records or derivative material generated from the database prior to its purging could exist elsewhere. *Id.* 17:6-19:7. The Court is not persuaded by these speculative arguments. The Second Patterson Declaration directly responds to the only plausible, specifically asserted injury in the Complaint – that the federal law enforcement database identified in the Patterson Declaration as a repository of telephone metadata on calls between the U.S. and drug-related foreign countries contains HRW call data, and that that database still exists.[2] Thus, the Second Patterson Declaration is an evidentiary showing that, unrebutted, would destroy HRW's standing and deprive the Court of jurisdiction to hear this case. If HRW intends to rebut or undermine the showing, it must respond by "present[ing] affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair*, 880 F.2d at 201.

HRW was unable to offer evidence that the Government still retains its call records in other forms or in other repositories in its opposition brief. HRW cites to various government filings in the *Hassanshahi* case, the criminal case in which the Patterson Declaration was originally filed, in an effort to expose "inconsistencies" in the way the Government discussed the Program. *See Opp.* 20:3-21:10. The "inconsistencies" are inconsequential. Documents suggesting that other agencies could access the DEA database or that the database was sometimes referred to as a "database component" do not demonstrate that the Government made copies of the subpoenaed call data or maintained the information in multiple databases, the jurisdictional rebuttal fact that HRW intends to prove. *Rumold Decl.*, Ex. 1-3; *see also Reply* 8:10-28. HRW also cites to online news articles from USA Today and The Intercept discussing a governmental call data collection program, *see Rumold Decl.*, Ex. 4-5, but these secondhand news reports are not admissible evidence of the Government's practices under the Mass Surveillance Program and cannot "not raise a genuine dispute of material fact regarding retention of metadata relating to Plaintiff." *See Reply* 9:3-4.

---

[2] Although the Complaint states that the information was retained and stored by the Government in "one or more" databases, *see Compl.* ¶ 34, the *Patterson Declaration* consistently references a single database, *Patterson Decl.* ¶¶ 1, 3-6, and the allegation that additional databases might exist is conclusory and unsupported by any specific factual allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

Instead, HRW's primary response to the Government's factual attack on standing is that HRW should be afforded the opportunity to conduct discovery regarding the challenged issue of retention of HRW's call records, so that it can respond to the Government's showing in the Second Patterson Declaration with credible, admissible evidence. *See Opp.* 23:7-24:20; *Pl. Request* ¶¶ 1-3. "[I]f it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded th[e] opportunity" for jurisdictional discovery, "[d]iscovery is necessary." *St. Clair*, 880 F.2d at 201 (citation omitted); *see also Gordon*, 687 F. Supp. 2d at 940-41 (refraining from ruling on whether plaintiffs faced the imminent threat of future injury in the form of additional "raid-style" inspections at their barbershops "while the parties engage in jurisdictional discovery related solely to whether it can be established that these raid-style inspections of local barberships in Moreno Valley are part of some policy or program of the City, County, and/or the Board").

In HRW's request for discovery and an evidentiary hearing, HRW seeks three forms of discovery: (1) copies of subpoenas issued to telecommunications carriers; (2) names of government agencies that have accessed records through the Program; and (3) a deposition of Patterson. *See Pl. Request* ¶ 3. Only the third discovery request directly targets information that could undermine the Government's evidentiary showing that HRW's collected records have been purged. The Court agrees that some limited discovery directed toward the Government is warranted because such discovery could possibly provide HRW with jurisdictional evidence suggesting that the Government still possesses HRW's call records in some form. Accordingly, the Court will allow HRW the opportunity to conduct limited discovery on this issue.

However, a deposition of Patterson is not the most narrowly tailored mechanism to uncover the whether the Government continues to retain HRW's call records. Instead, the Court will allow HRW to serve a limited number of interrogatories on the Government. Moreover, the scope of issues that HRW identifies in its request for jurisdictional discovery is overly broad. The Court limits the interrogatory topics to the following issues: (1) whether the Government retains call records in repositories other than the purged database; and (2) whether the Government retains Program call records in derivative forms. Accordingly, the Court orders that HRW is permitted to serve no more than five interrogatories on the Government regarding these two issues.

IV.   Conclusion

For the foregoing reasons, the Court HOLDS IN ABEYANCE ruling on the Government's motion to dismiss for lack of subject matter jurisdiction and GRANTS IN PART HRW's request for discovery. The Court orders that HWR may serve no more than five

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-2573 PSG (JPRx) | Date | August 14, 2015 |
|---|---|---|---|
| Title | Human Rights Watch v. Drug Enforcement Agency, *et al.* | | |

interrogatories on the Government.  The timing of this limited discovery shall proceed as follows:

| | |
|---|---|
| Deadline for HRW to serve interrogatories: | September 11, 2015 |
| Deadline for the Government's responses: | October 13, 2015 |
| Deadline for HRW's supplemental briefing: | November 9, 2015 |
| Deadline for the Government's response briefing:[3] | November 23, 2015 |

HRW's request for discovery is otherwise denied.  The Court will not rule on HRW's request for an evidentiary hearing at this point.  After reviewing the evidence and arguments submitted to the Court in the supplemental and response briefing, the Court will determine whether an evidentiary hearing is necessary.

**IT IS SO ORDERED.**

---

[3] Each additional brief cannot exceed ten (10) pages in length and must be formatted in accordance with the Local Rules.